## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MONTEZ ARTIS, B84281, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )      Case No. 25-cv-1904-DWD |
| DAVID MITCHELL, | ) |
| CRISTAL CROW, | ) |
| LATOYA HUGHES, | ) |
| C/O RUSH, | ) |
| WARDEN CORALLIS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Montez Artis, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights related to his conditions of confinement.  (Doc. 1).  Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are

to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009)*.

### The Complaint

Plaintiff takes issue with his conditions of confinement at Pinckneyville since he arrived from Pontiac Correctional Center on June 7, 2023.  Plaintiff specifically complains about cell size, double celling, the lack of recreation, the lack of clean drinking water, exposure to second-hand smoke, and the lack of access to most typical prison recreational activities.  He broke his complaint into six claims: Claim 1 (double celling in small cells); Claim 2 (double celling with incompatible cellmates); Claim 3 (overcrowding and staff shortages); Claim 4 (exposure to second-hand smoke); Claim 5 (lack of recreation); Claim 6 (contaminated drinking water).  Many of Plaintiff's allegations are directed generically at the prison, rather than being associated with actions of the individual defendants.

In Claim 1, Plaintiff complains that at Pontiac he was single celled, and that at Pinckneyville all inmates should be single-celled because the cells have so little free floor space that they violate the standards set by state law and by various correctional and public health associations.  (Doc. 1 at 6-7).  He claims that in a small cell he suffers PTSD from a prior attack, and he is often threatened by cellmates.  He has written 20 grievances to no avail.  In Claim 2, Plaintiff then complains that Pinckneyville has "numerous unconstitutional patterns and practices" that amount to torture and present a serious risk.  He alleges that Pinckneyville and IDOC refuse to ensure that inmates are compatible.  For example, he alleges they will co-house members of opposing gangs, those who are educated and uneducated, and those who suffer mental illness with those who do not.

He alleges that the thoughtless double celling has led to many physical and sexual assaults, including three to four murders since his arrival at Pinckneyville. (Doc. 1 at 8). Plaintiff summarily alleges, "Defendants Warden John Barwick, Placement Officer Hill, and Rush, Warden Corallis, Warden Crow, and IDOC Director Latoya Hughes has facilitated, promoted, or turned a blind eye to these unconstitutional violations, I have requested a single man cell status for the entire time here at PNK, I even wrote the governor before filing this lawsuit, but I haven't received any response." (Doc. 1 at 8).

In Claim 3, Plaintiff complains that Pinckneyville is overcrowded and understaffed, leading to the cancellation of many amenities, such as law library, chapel, school, health care, and recreation. (Doc. 1 at 8-9). He complains that there is also a culture of smoking and drug use, and there are frequent physical altercations. As with Claim 2, Plaintiff summarily faults Defendants Barwick, Corallis, and Hughes with these problems, although he does not explain how or when they were notified of the problems. (Doc. 1 at 9).

In Claim 4, Plaintiff alleges that in February of 2024, Defendant Rush allowed him to be placed with an inmate who smoked unknown substances. He alleges that the second-hand smoke made him feel intoxicated, and he vomited and experienced headaches. (Doc. 1 at 9). On May 3, 2024, he informed Rush that he was in a dangerous situation due to his cellmate's drug use, but Rush indicated she did not care and would not help unless one of the two refused housing. When Plaintiff threatened to escalate his concerns, Rush retorted that he better watch out for himself. Plaintiff alleges he was ultimately placed with about 9 additional cellmates who smoked day and night. He

claims he is suing for "futuristic harm, not knowing the long term affects from this dangerous drug." Nurses offered no care and said there was nothing they could do while he was housed with smokers. On May 8, 2024, Plaintiff filed a grievance concerning Rush. He claims that in early September 2024 he was awakened and told to stop filing grievances against Rush or about smoke. Plaintiff was then taken to extreme isolation where he was charged with possessing drugs. He was acquitted within 20 days when the Illinois State Police indicated that paper in his possession was not positive for drugs. He faults Rush for maliciously orchestrating his placement with individuals addicted to drugs. (Doc. 1 at 10).

In Claim 5, Plaintiff alleges that from June of 2023 to May of 2025, he was only afforded approximately two visits to the yard for exercise each month. Without exercise his health has deteriorated. He does not attribute this conduct to any specific defendant. (Doc. 1 at 10-11).

In Claim 6, Plaintiff alleges that upon arrival at Pinckneyville in June of 2023, he began to experience diarrhea, vomiting, nausea, and constipation. He eventually discovered that Warden Mitchell had received notices of violations from the Illinois Environmental Protection Agency concerning water quality at Pinckneyville. He alleges that in July, October, and November of 2023, he experienced bouts of illness that he associated with foul smelling and tasting water. He complains that not all violations have been fixed, and inmates are not afforded enough bottled water or a proper way to boil water. (Doc. 1 at 11-12).

As relief, Plaintiff seeks to be single celled, to receive 10 hours of recreation, to be housed in an ADA cell, to receive a case of water per week, for the entire prison to be single celled, and to receive a double mattress permit.  He also seeks an unspecified amount of compensatory and punitive damages.

Along with the complaint, Plaintiff filed a Motion for a Temporary Restraining Order (Doc. 2) accompanied by 220-pages of exhibits.   In the Motion, Plaintiff again emphasizes that the cells are too small, and he complains that he has been double celled with inmates who have threatened him or exposed him to smoke.  He does not mention any defendants by name in the Motion.  He claims that he will suffer irreparable injury if he is not moved to a single cell.  He also complains that both inmates and staff are being plagued by the effects of excessive smoking.  The sole preliminary injunctive relief that Plaintiff seeks is a single cell.  (Doc. 2 at 4).  His exhibits include diagrams of cells, descriptions of appropriate cell size, records concerning some of his cellmate's disciplinary and mental health history, an affidavit from a mental health professional about double celling, and an article from the prison employee's union about drug issues in the prisons.

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** **Eighth Amendment conditions claim regarding small cells;**
>
> **Claim 2:** **Eighth Amendment conditions claim regarding double celling with incompatible cellmates against Defendants Barwick, Rush, Corallis, Crow, and Hughes;**

| | |
|---|---|
| **Claim 3:** | **Eighth Amendment overcrowding claim against Defendants Barwick, Corallis and Hughes;** |
| **Claim 4:** | **Eighth Amendment deliberate indifference claim against Defendant Rush for consistently placing Plaintiff with cellmates who exposed him to second-hand smoke;** |
| **Claim 5:** | **Eighth Amendment lack of recreation claim;** |
| **Claim 6:** | **Eighth Amendment drinking water claim against Defendant Mitchell.** |

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* <u>*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)</u> (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## <u>Preliminary Dismissals</u>

First, Plaintiff mentioned Warden Barwick and Officer Hill in Claim 2, and Warden Barwick in Claim 3, but he did not properly name either of these individuals in the caption of the case as defendants. Federal Rule of Civil Procedure 10(a) requires that the case caption list all defendants. The allegations against Barwick and Hill are improper because they are not named in the caption.

Plaintiff properly named Defendants David Mitchell, Cristal Crow, and Corallis, current or former wardens at Pinckneyville. He also named Latoya Hughes, the IDOC Director. Plaintiff did not describe individualized interactions with any of these defendants. Claims 1 and 5 make no mention of these individuals and instead speak

generically about the cell size and lack of recreation at Pinckneyville.  To state a viable §

1983 claim, an inmate must describe the personal actions that a defendant took that

caused him harm.  *See, Black v. Lane*, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994) (merely naming

a defendant without describing his or her personal role is insufficient to state a claim);

*Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983

requires personal involvement in the alleged constitutional deprivation"); *see also Pepper*

*v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the

individual defendant must have caused or participated in a constitutional deprivation.").

Additionally, a generic, "one or more defendants caused me harm" argument is not

enough to plead a valid claim.  *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).

Plaintiff's complaint offers nothing more than a "one or more defendants harmed

me" type of assertion against Crow, Hughes, and Corallis, who are only generically

mentioned in a listing of defendants associated with Claims 2 and 3.  As for Warden

Mitchell, the only mention is Claim 6.  In Claim 6, Plaintiff discusses poor water quality.

He associates Mitchell with this issue, by alleging Mitchell received violation reports

from the Illinois EPA, but this is not enough.  He does not explain how he personally

informed Mitchell that the situation was harming him, the letters may have identified

technical system deficiencies, but there is no indication they warned of harms to

individuals if issues went unremediated.  A plaintiff cannot succeed on a § 1983 claim by

simply naming individuals high on the bureaucratic chain for their generic liability as

supervisors of the prison system.  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (a

plaintiff cannot succeed under § 1983 by alleging that any employee who knows (or

should know) about a wrong has an obligation to fix it). Overall, Plaintiff's complaint is far too vague to support individual claims under § 1983 against the named high-level supervisors. While it is not impossible to establish liability against a supervisor, Plaintiff has not alleged facts demonstrating direct link between his personal experiences and these defendants to proceed on the claims as pled. Claims 1, 2, 3, 5, and 6 will all be dismissed as insufficiently pled.

## Analysis

Plaintiff alleges that beginning in February of 2024, he was placed in a cell with a known drug-user and smoker. He claims he spoke to Defendant Rush about being moved. He then alleges he spoke to Rush again on May 3, 2024, and explained his situation was dangerous, and his cellmate's smoking was making him sick. Rush indicated she would not do anything unless one of the inmates refused housing. Plaintiff indicated he would escalate his concerns, and Rush then told him he had made the situation worse for himself. He alleges she ultimately placed him with 8-9 more cellmates that all smoked and used drugs. On May 8, 2024, he filed a grievance about Rush, and about two months later he claims he was told not to file more grievances against her and was charged with possessing drugs. The disciplinary report was overturned, but not until after he had spent 20 days in segregation.

A prison is not required to provide a smoke free environment. *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Powers v. Snyder,* 484 F.3d 929, 932 (7th Cir. 2007). The Supreme Court held in 1993 that a prison inmate "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference,

exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35.  Objectively, an inmate must show he is exposed to levels of environmental tobacco smoke (ETS) that are unreasonably high, and that pose such a grave risk it violates contemporary standards of decency.  *Id.*  Subjectively, an inmate must demonstrate that a defendant exhibited deliberate indifference to a serious risk of harm to his future health.  Ultimately, an inmate must provide competent and reliable expert medical testimony that he personally faces a risk of a future serious medical condition based on smoke exposure.  *Henderson v. Sheahan*, 196 F.3d 839, 842 (7th Cir. 1999).  An inmate can also bring a second-hand smoke claim if he alleges that he has a present chronic condition, like asthma, that is severely exacerbated by smoke exposure. *Id.* at 845.

Here, Plaintiff does not claim to have an existing condition exacerbated by the smoke and instead states that he is suing for futuristic harm from exposure to the smoke. He alleges that thus far he has suffered headaches and vomiting.  Plaintiff claims he communicated his concerns and ailments to Rush, and she responded by prolonging his placement with inmates who were all addicts and heavy smokers.  At this early juncture, these allegations are sufficient to proceed, although ultimately, they will require significant evidence about the level of exposure and expected long-term health consequences.

To the extent Plaintiff hinted at retaliation or a due process claim related to his discipline, he did not provide enough facts to substantiate these theories against Rush or any other defendant in his complaint.

## Motion for a Preliminary Injunction

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief.  *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).  As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success— in other words, a greater than negligible chance of winning."  *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).  The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief.  Irreparable harm is harm which cannot be repaired.  *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for.  The injury must be of a particular nature, so that compensation in money cannot atone for it.").  The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest."  *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).  "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor."  *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued.  *Mays*, 974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."  18 U.S.C.

§ 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

Plaintiff seeks injunctive relief in the form of single celling, but he does not have any claims that survived review about this specific issue. The sole claim that survived review is Claim 4, against Defendant Rush, concerning placement with inmates who smoked heavily. Plaintiff does not say anything about his current cellmate in his Motion. Because injunctive relief must be tied to the defendant and allegations that are proceeding in the case, and there are not specific allegations about Plaintiff's current cell placement, his Motion for a Preliminary Injunction (Doc. 2) must be denied.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 4** of the Complaint (Doc. 1) survives against Defendant Officer Rush. By contrast, **Claims 1-3 and 5-6** and all other allegations are dismissed as insufficient. The Clerk of Court shall **TERMINATE** Defendants Mitchell, Crow, Hughes, and Corallis for Plaintiff's failure to state a sufficient claim against them.

The Clerk of Court is **DIRECTED** to prepare for Defendant Rush: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of

the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for a Preliminary Injunction (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 27, 2025

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.